Please call the next case. 115-1183, Dean Dairy Holdings v. Richard McCauley. Good morning, may it please the court. I'm Paul Aschey on behalf of Dean Dairy Holdings, LLC, Huntley, Illinois. This case is a very simple manifest wage case. And it's kind of unusual that as an appellant I'm arguing in favor of upholding the manifest wage standard, but this is because the commission's original decision was for a manifest wage case. Your whole theory is that the trial judge usurped the function of the commission, reweighed the evidence, and reversed the commission and sent it back. The commission even on remand said we wouldn't have changed our decision, we're only going to award the benefits because he told us to do so. Because the judge made me do it. Yeah, in a nutshell that's it. That's exactly it in a nutshell. Why do we get so many cases coming from the same judge? Well, if there's a silver lining in all of this... He's gone. He's retired. Now be careful, this is being recorded. That's true. But I don't know if that's necessarily a silver lining, but it might affect the caseload of this body. So in essence, too, as a corollary of that, we're reviewing the original commission decision, correct? That is correct. And so my point with regard to that is that... Dr. Butler and Dr. Anderson made your case, if they were believed, is that right? I'm sorry, could you please repeat the question? Dr. Butler and Dr. Anderson made your case, if they were believed, therefore the first decision was not against the manifest way. That's one way of looking at it, but I believe it's more than just Dr. Anderson and Dr. Butler. I think if you look at the objective diagnostic findings that were made by the radiologists and Dr. Liu prior to the injury, and then the diagnostic findings post-date of accident, that is where, that's the underpinning of Dr. Butler's and Dr. Anderson's opinions about causation, because there's no objective change in the pseudoarthrosis condition between pre-accident and post-accident, and that was how they were able to make the conclusion that the accident didn't have any impact on that and result in any need to touch that part of the petitioner's condition, but rather it was merely a temporary cervical strain. What's wrong with Tanzen McNally's opinions? The problem here is not necessarily that Dr. McNally is not entitled to his opinion. It is that the function of the commission is to weigh these opinions and to look at them in light of the entire record and to assign their credibility value to that, and what Judge Lopez did was to usurp that position and re-weigh the evidence to support his own conclusion. But specifically with Dr. McNally, two things I would point out to this court are that, number one, he was less experienced than either Dr. Butler or Dr. Anderson, and number two, to achieve his opinion, he had to disagree with the radiological interpretations of the diagnostic studies to support his opinion that there was some sort of a change. Well, you've done a good job in relating the underlying facts, but does it even have to go that far? As he's suggesting, you've got the two doctors, the commission, as we well know, conflicts in the evidence, the credibility, and the weight to be given. They chose the two doctors, Butler and Anderson, over McNally. Is there anything further to be argued? That's really about the size of it. I was just going to throw in that the twice-over-clean case, the way that that case was handled, is very similar to this case to the extent that the arbitrator and the commission weighed the facts and made a particular decision. It was overturned by the appellate court based on similar reweighing of some of the expert testimony and of the ultimate conclusion in that case of whether the daily activity exception created some sort of break in the chain of causation. And the Supreme Court spent a lot of time talking about that rule, but at the end of the day, the reason why they reversed the appellate court was because they felt that it was the commission's position to determine that. And that's the same thing we're arguing here. Thank you, counsel. Counsel, you may respond. Well, we don't want you to assume you're stepping into the hot seat here. It does feel a little bit warm up here, Justice Hudson. Thank you, Justices. Brent Schmitz on behalf of the worker in this case, Richard Jankowski. I disagree with the assertion that this is a simple manifest weight case. It is a manifest weight case, but I think if it was simple, the circuit court would have been able to do it. It would have simply affirmed the commission's findings. Don't bet on that. Well, I won't have to be betting on that in the future, as we previously discussed. But in this case, I think it's less than simple. What was wrong with Dr. Anderson's opinion or Dr. Butler's opinion? What's wrong with them is the fact that they gave two different opinions and the commission relied on both of them. So the commission in its decision states that we find Dr. Butler and Dr. Anderson to be more credible than Dr. McNally. The problem with that finding is that Dr. Butler and Anderson said two different things. And so what the commission is doing is they're not making a finding. They're giving us a question. The commission said in its decision this is either no injury or it's a cervical sprain. And they don't say which one it is. They leave an open question there. What were the conclusions of Butler and Anderson? Maybe they gave different reasons, but what did they conclude? Dr. Butler concluded in his first examination that it was a temporary sprain strain. If there were further problems going on, it was probably due to his shoulder. The shoulder was later examined. The shoulder was found not to be a problem. And then in his testimony, Dr. Butler testified that, well, if he's still symptomatic now at the time of my testimony, then I don't know what it is. But it's not a cervical sprain strain. So to say that Dr. Butler found a cervical sprain strain isn't taking his testimony for what he actually said. What he actually said was if he's still symptomatic now, I'm not sure what's going on, but it's not a sprain strain. And Dr. Anderson came in, and Dr. Anderson said this is a pseudoarthrosis. And what he's talking about there is in the prior fusion, 2005, bone never grew in where the hardware was placed. The idea, and Dr. McNally describes this, Dr. Anderson actually describes it very well also, the idea is that once the fusion is completed, bone will grow in over the hardware that's placed. In this case, bone didn't grow in. It was just hardware. But he was declared stable. He was declared a maximum medical improvement. He was released to work. He worked for two years, a little bit more than two years, full duty, doing a very heavy job. And then this accident occurs. After this accident, he now requires surgery. And so because of that, I think we've got to look at this as a situation where we are dealing with a permanent exacerbation or acceleration, which Dr. Anderson said, you know, that's not what's going on here. Whatever happened here, you know, this would not have been contributory. But he also testified, and the circuit court discussed this in great detail, that what happened to Mr. Jankowski was not inevitable. It wasn't inevitable that the pseudoarthrosis, that the lack of bone growth, would become symptomatic. It wouldn't be a problem in the future. It wasn't inevitable. If it's inevitable, or if an act of daily living could cause this, then it's not compensable. The case doubles that. I've raised some legitimate points, but if we were to agree with that and say that McNally's opinion should be given precedence over Anderson and Butler's, how do we reach that finding without doing violence to the well-settled rule? It's not up to us to substitute our judgment for that of the Commission on medical evidence. How do you get around that rule? The way I get around that, Justice Hudson, is I would say that when the Commission made their findings on who's credible and who's not as far as the witnesses, and when the Commission weighed this evidence, they came to, in their decision, two inopposite conclusions. They came to the conclusion that either there was no injury at all, or it was a sprained strain. And for the Commission to come to two completely inopposite conclusions shows that the Commission has some serious defects in its reasoning with respect to looking at the medical evidence. Okay. Let's part. That's five minutes ago. You were right there. Okay. If there was no – what was the first that you said was inconsistent? There's either no cervical sprain or – Or there is, but it was just a sprain and there was nothing further. Okay. Well, no, you said it in binary terms. What was it? The – and I can – Your argument. I can quote the Commission's language on it. Okay. What the Commission said is, quote, Petitioner did not sustain an injury to his cervical spine. Stop there. Then there's no compensation, right, on that basis? On that basis, there would be no compensation. Yes or no? Yes or no? There would be no compensation. Thank you. Okay. Now what's the next one? Or, at most, he suffered a temporary cervical strain which did not permanently aggravate or accelerate. And if that finding were accepted, would there be compensation? There would be compensation. Yes or no? But we'd be talking about very small compensation. Okay. Minus. Yes. Minus. All right. So the problem there with the first finding – Okay. Just a minute. Certainly. That was further the discussion part of the arbitrator's decision, which was adopted by the Commission. However, I mean, the arbitrator – I mean, he resolved those competing things because in the order part on the second page, he said, Arbitrator does not award medical benefits or TTD benefits, finding that Petitioner failed to prove that his current condition of ill-being is causally connected to his employment. So, I mean, there was no – I mean, the order was he failed to prove no compensation, period. And that was affirmed and adopted by the Commission. That is what the order said? Yes, Mr. Justice. I mean, so this argument about, you know, he alternatively found that he may have had a cervical strain or whatever, that wasn't the ultimate decision. No. If you look at the order, and what we get from the Commission is the simple two-page order, and then we also get the more detailed conclusions. If you look at the order on its own – I think if the underlying reasoning in the findings doesn't support what's in the order, I think the findings control. The findings are more detailed. The findings give the Commission's reasoning. If the findings in the order are an opposite, we've got to go with the findings. Well, in the findings, the addendum, whatever you want to call it, to the arbitrator's decision, I mean, there's discussion about the facts. And then it gets down to, under, it says, F, is the Petitioner's present condition of ill-being causally related to the injury? And in that portion, the arbitrator said, and the Commission adopted, it's not connected. And that was repeated on page two of the Commission form. Correct. I was having trouble seeing where there was some kind of alternative decision here. There wasn't an alternative decision. There was discussion about what doctors said, and there was possibility of surgical strain. They said nothing. They said nothing in that section. That's correct, Mr. Justice. So your argument is that conclusion is unwarranted because – Which conclusion? I'm sorry. I'll follow. Conclusion of the arbitrator. All right. Our argument then – Adopted by the Commission. And the argument of the trial court is that that conclusion – We're not reviewing the trial court. No, you're absolutely not reviewing the trial court. This Court reviews the decision of the Commission, but I think this Court can look at the decision of the circuit court and find it to be instructive and find it to be persuasive. The circuit court did issue in this case a very detailed ruling explaining why it made the decision that it did and why it reversed the Commission. The conclusion you don't like was exactly the conclusion that Dr. Anderson came to. Dr. Anderson testified that he found no post-incident diagnostic tests which showed evidence of an aggravation or acceleration of a preexisting cervical spine condition. Then he goes on to say that although he's unable to exclude that there may have been an aggravation, it was unlikely given the mechanics of the accident. And then he goes on to say that any aggravation which might have occurred was totally temporary and that the claimant would have recovered by August 2010. Now, you keep saying these are mutually exclusive. I don't think they are. I don't think there's anything wrong with the doctor saying, look, I don't think there's – in my opinion, there's absolutely no causal connection between the injury at work and the cervical spine condition. However, if there was, it would have been only temporary and it would have been over by August the 10th. What's wrong with that? I don't think there's anything wrong with the doctor saying that. I think there's something wrong with the Commission not being clear in what it is finding. Well, it was pretty clear he got nothing. He got nothing. And so they must have found that he failed to prove that there was a causal connection between his current condition of well-being and his accident at work. So, I mean, their conclusion is very clear. You make an intriguing argument, and just briefly follow up on the logic of it. You seem to be saying, as Justice Folgers was trying to draw out from you, one doctor says this is the basis for no compensation. The other doctor comes up, this is another alternative basis for no compensation. And so then you say, well, because they're inconsistency, you must go to option three. Door number three, you put it together, he wins. How do you arrive at that? Even if they were allegedly inconsistent, how does that help your case? It helps my case in the sense that I think the Commission needs to, if the Commission is going to state that it is relying on certain opinions and coming to a conclusion, that those opinions at least need to be consistent. Now, if the Commission had said. What case law says they have to be consistent? Do you have any case law that says they have to be consistent? Archer Daniels Mifflin case holds that the Commission's decision needs to be internally consistent. In what regard? In that particular case, it was with regard to, if I'm recalling this correctly, there was a award of benefits that was in opposite with one of the Commission's previous findings. And so there was a holding that the Commission's decision needs to be internally consistent. And so I think when the Commission is looking at competing methods. I'm sorry, Your Honor? Yeah, I'm just trying to structure internally consistent. But if the two prongs don't result in compensation, how are they internally inconsistent? If the Commission had said, we think Dr. Anderson's right, we think Butler and McNally are wrong, there's no compensation, and that probably wouldn't be against the manifest way to the evidence. If the Commission said, we think Butler's right, and we think Anderson and McNally are wrong, that probably wouldn't be against the manifest way to the evidence. But because the Commission is just to say, we think Butler and Anderson are right, Butler and Anderson can't both be right at the same time, based upon what their opinions were. So if the Commission is finding that they're both right at the same time with inopposite opinions, I think that gives us license to revisit the Commission's entire reasoning. That's your whole argument? That is, Mr. Justice. That is a fine point. Yes, Your Honor. Okay. Thank you, counsel. Thank you all. Thank you. Now, given we got to that point in your reply, could you just address that? Yeah. That was all I was going to focus on. I don't think that these two opinions are mutually exclusive. Dr. Anderson was focused on the pseudoarthrosis and whether it was aggravated or accelerated. Dr. Butler was focused on what did happen at the time of the accident, and he came up with a temporary strain. Dr. Anderson opined that there was no aggravation or acceleration. I don't see that that's an inconsistent. Well, they were both consistent on the finding, and neither of them found any diagnostic tests would show evidence of an aggravation or acceleration of a preexisting spinal condition. That's correct. Butler and Anderson both said that. And in that way, that's why I believe that they're both consistent and support the commission's ultimate conclusion. The commission's decision found that the incident occurred, but that there was no causal relationship between that and the subsequent condition, which was the treatment that he received for the pseudoarthrosis, which he already had prior to the date of the incident. And I think that that's why the commission's original decision was so well-founded, and that is not only on the opinion testimony but also on the objective diagnostics. And for that reason, we ask that the original decision be reinstated and that all of the subsequent orders be vacated. Thank you. Thank you, counsel, both for your arguments on this matter. We'll take them under advisement and written disposition shall issue.